IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:13-cv-00203-MR-DLH

| | |
|---|---|
| **MOUNTAINEER FINANCIAL SERVICES, LLC, d/b/a CAPITAL ONE REWARD ZONE OF HERNDERSONVILLE, NC,** )<br>)<br>)<br>)<br>)<br>**Plaintiff,** )<br>)<br>**vs.** )<br>)<br>**CITY OF HENDERSONVILLE, NORTH CAROLINA,** )<br>)<br>)<br>**Defendant.** )<br>_____ ) | **MEMORANDUM OF DECISION AND ORDER** |

**THIS MATTER** comes before the Court upon the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2].

**I.     PROCEDURAL BACKGROUND**

The Plaintiff Mountaineer Financial Services, LLC, d/b/a Capital One Reward Zone of Hendersonville, NC, initiated this action on July 17, 2013, asserting a claim under 42 U.S.C. § 1983 for violations of procedural due process and seeking a declaratory judgment that the Plaintiff's business operation is lawful and does not violate any gaming, gambling, or sweepstakes law of the State of North Carolina. [Doc. 1]. On July 22,

2013, the Plaintiff filed the present motion, seeking a temporary restraining order and preliminary injunctive relief. [Doc. 2]. On July 24, 2013, the Court denied the Plaintiff's request for a temporary restraining order on the grounds that the Plaintiff had failed to demonstrate irreparable harm. [Text-Only Order entered July 24, 2013]. The Court's Order indicated that a hearing would be scheduled on the Plaintiff's request for a preliminary injunction once counsel had made an appearance on behalf of the Defendant. [Id.]. On September 3, 2013, the Defendant City of Hendersonville filed its Answer to the Plaintiff's Complaint. [Doc. 3]. The parties subsequently agreed to have the motion for preliminary injunction considered on briefs and affidavits in lieu of a hearing, and the parties were directed to file any affidavits in support or in opposition to the motion on or before September 27, 2013. [Text-Only Order entered Sept. 24, 2013]. On September 27, 2013, the parties submitted affidavits for the Court's consideration, and the Defendant filed a response in opposition to the Plaintiff's motion. [Doc. 6].

Having been fully briefed, this matter is now ripe for disposition.

## II. FACTUAL BACKGROUND

The Plaintiff opened the Capital One Reward Zone in Hendersonville on June 21, 2013. [Complaint, Doc. 1 at ¶25].[1] Capital One Reward Zone is a retail outlet in which the Plaintiff sells memberships for an initial membership fee of $10.00 and a monthly fee of $10.00 thereafter. [Id. at ¶11; Affidavit of Brendon Lo ("Lo Aff."), Doc. 7 at ¶¶7, 8]. Upon payment of the initial $10.00 membership fee, the customer receives a prepaid/reloadable VISA card/virtual bank account and 1000 loyalty reward points. [Id. at ¶9; Complaint, Doc. 1 at ¶12]. Once an individual purchases a membership, his or her card may loaded or reloaded with funds and/or "loyalty reward points." [Complaint, Doc. 1 at ¶14]. These loyalty reward points may be redeemed for products at various retail businesses or for cash through a third party financial institution. [Id. at ¶13; Lo Aff., Doc. 7 at ¶21].

After the loyalty reward points are deposited in the customer's account, the customer can utilize some or all of those points to enter a sweepstakes at the Plaintiff's place of business. [Complaint, Doc. 1 at ¶ 16; Lo Aff., Doc. 7 at ¶12]. The sweepstakes is conducted utilizing a

---

[1] The Complaint is verified by affiant James J. Monaghan. [Verification, Doc. 1 at 12].

computer server which is connected to computer terminals within the Plaintiff's store. [Affidavit of Dennis Barni ("Barni Aff."), Doc. 2-3 at ¶5]. The server contains a database of 20 million entries, each with a predetermined point value, which will redeem a total of 368,590,000 points. [Id.]. At the time that a customer enters the sweepstakes, an entry is assigned to the customer from the database. [Id.]. This assignment of the entry does not occur at the time of the reveal, and the use of the game display does not affect this point value in anyway. [Id. at ¶6].

The sweepstakes entry points are entered at the point of sale ("POS") computer terminal by the cashier. When the cashier enters the customer's loyalty reward points into the sweepstakes at the POS terminal, a receipt is printed which displays the winning entries in the sweepstakes, and the total number of points won, if any. [Id. at ¶12].

Thereafter, the customer may go to a computer terminal within the Plaintiff's business and access entertaining simulation games. [Lo Aff., Doc. 7 at ¶14]. When the customer logs into the terminal, the result of the sweepstakes is once again disclosed to the customer on a black and white display in a columnar format which depicts each winning number and the number of points won for each winning entry. [Id. at ¶15; Lo Aff. Ex. A,

Doc. 7 at 8]. After the display of the results of the sweepstakes, a second screen appears which contains the following disclaimer:

> By checking the box, I understand my winning sweepstakes entries have been determined at the time of purchase, and the sweepstakes is over. I have just reviewed my winning pre-revealed entries in a non-entertaining display. Any game past this screen is for entertainment purposes only and has nothing to do with the sweepstakes.

[Lo Aff., Doc. 7 at ¶16; Lo Aff. Ex. B, Doc. 7 at 9]. Underneath the disclaimer is a box that the customer must click in order to continue to play the entertaining games. [Lo Aff., Doc. 7 at ¶17]. Customers who previously entered the sweepstakes can play the games and earn additional points. [See Affidavit of Doug Jones ("Jones Aff."), Doc. 6-1 at ¶¶6, 7]. Customers can also choose to go to a computer terminal to play games without entering a sweepstakes, but these customers earn no points by playing the games. [Lo Aff., Doc. 7 at ¶25].

On Monday, June 24, 2013, Hendersonville Police Captain Jones approached the Plaintiff's agent, who was operating the retail establishment, and advised him that he would be required to close the business or be charged criminally with a violation of the gambling/sweepstakes statutes. [Affidavit of Nathan Walker ("Walker Aff."),

5

Doc. 7-3 at ¶6; Complaint, Doc. 1 at ¶27].[2] Based upon that encounter, the Plaintiff decided to cease operation of its business. [Id. at ¶28]. The Plaintiff continues to pay the overhead costs involved in its business in the amount of approximately $5,000.00 per week, which costs are in addition to the startup costs already expended by the Plaintiff in excess of $100,000.00. [Affidavit of James J. Monaghan ("Monaghan Aff."), Doc. 2-2 at ¶4]. The Plaintiff is currently in default on its lease payments, and the Plaintiff's suppliers have threatened to terminate their services. [Affidavit of James Callihan ("Callihan Aff."), Doc. 7-1 at ¶5; Affidavit of Julie Winnell ("Winnell Aff."), Doc. 7-4 at ¶5].

## III. STANDARD OF REVIEW

A plaintiff seeking a preliminary injunction must demonstrate that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm absent injunctive relief, (3) the balance of equities tips in its favor, and (4) the injunction would be in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). "A preliminary injunction is an extraordinary remedy never awarded as of right." Id. at 24. Thus, in each

---

[2] Captain Jones denies threatening to charge Walker with a crime or to confiscate or destroy the computer terminals. Rather, he maintains that he told Walker that "continued operation of these games could be a violation of N.C.G.S. 14-306.4 and could result in criminal charges, and that he may want to consult with any attorney." [Jones Aff., Doc. 6-1 at ¶7].

case the Court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 542 (1987). Ultimately, a plaintiff's entitlement to preliminary injunctive relief is a matter of discretion with the Court. See Metropolitan Reg'l Info. Sys., Inc. v. American Home Realty Network, Inc., 722 F.3d 591, 595 (4th Cir. 2013).

## IV. ANALYSIS

In its first claim for relief, the Plaintiff asserts that it was deprived of procedural due process in violation of the Fourteenth Amendment. [Complaint, Doc. 1]. To succeed on its procedural due process claim, the Plaintiff must demonstrate that it had a constitutionally protected life, liberty, or property interest; that some form of state action deprived it of that interest; and that the procedure employed was "constitutionally inadequate." Sansotta v. Town of Nags Head, 724 F.3d 533, 540 (4th Cir. 2013) (citation omitted). Here, the Plaintiff has failed to show a likelihood of success on the merits of its due process claim because it has failed to show that the Defendant deprived it of any constitutionally cognizable property right. The Plaintiff specifically claims that it "has been deprived

7

of its business interest and established benefits for the preservation of such benefits." [Complaint, Doc. 1 at ¶36]. The assertion of a "general right to do business," however, has not been recognized as a constitutionally protected right. See College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd., 527 U.S. 666, 675 (1999) ("The assets of a business (including its good will) unquestionably are property, and any state taking of those assets is unquestionably a "deprivation" under the Fourteenth Amendment. But business in the sense of *the activity of doing business,* or *the activity of making a profit* is not property in the ordinary sense . . . ."); see also In re Premier Automotive Services, Inc., 492 F.3d 274, 283 (4th Cir. 2007) ("The recognition of such a broad 'right to do business' would be akin to that recognized in Lochner v. New York, 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905), its progeny, which the Supreme Court has long since refused to recognize.") (quoting Turner v. Dammon, 848 F.2d 440, 445 n.3 (4th Cir. 1988)).

Even assuming, however, that the Plaintiff has identified a protectable property right, the Plaintiff fails to satisfy the second element required for a procedural due process claim because the Defendant did not deprive it of these interests. While the Plaintiff claims that it was threatened with

criminal prosecution and/or seizure of its property (a claim which the Defendant vigorously disputes), none of the Plaintiff's agents or employees has been charged with a criminal offense, none of the Plaintiff's property has been seized, and the Plaintiff's business was not forcibly shut down. Rather, the Plaintiff made a voluntary decision to terminate its business operations. "[I]f one voluntarily relinquishes some property or liberty interest, then she cannot have a claim for a due process violation because no state official deprived her of the interest." McBeth v. Himes, 598 F.3d 708, 723 (10th Cir. 2010); see also Eckstein v. Cullen, 803 F.Supp. 1107, 1118 (E.D. Va. 1992) (dismissing claim of prior restraint on plaintiff's First Amendment rights noting that plaintiff's "decision to cease selling any sexually explicit materials, while perhaps reasonable in light of the potential for being prosecuted for a criminal obscenity violation, was a product of her own choice. Defendant's activities, even the overly broad search of plaintiff's store, do not rise to the level of harassment that courts have required before finding a prior restraint."), aff'd, 18 F.3d 1181 (4th Cir. 1994). Therefore, the Plaintiff has failed to demonstrate that it is likely to succeed in showing that it has suffered the kind of deprivation required to support a procedural due process claim.

In its second claim for relief, the Plaintiff seeks a declaration that the Plaintiff's business operation is lawful and does not violate any gaming, gambling or sweepstakes law of North Carolina, specifically N.C. Gen. Stat. § 14-306.4, which provides, in pertinent part, as follows:

> [I]t shall be unlawful for any person to operate, or place into operation, an electronic machine or device to do either of the following:
>
> (1) Conduct a sweepstakes through the use of an entertaining display, including the entry process or the reveal of a prize.
>
> (2) Promote a sweepstakes that is conducted through the use of an entertaining display, including the entry process or the reveal of a prize.

N.C. Gen. Stat. § 14-306.4(b). The statute defines a "sweepstakes" as "any game, advertising scheme or plan, or other promotion, which, with or without payment of any consideration, a person may enter to win or become eligible to receive any prize, the determination of which is based upon chance." N.C. Gen. Stat. § 14-306.4(a)(5). The term "entertaining display" is defined as "visual information, capable of being seen by a sweepstakes entrant, that takes the form of actual game play, or simulated game play," including video poker games or other video games. N.C. Gen. Stat. § 14-306.4(a)(3).

10

The Plaintiff contends that its sweepstakes program does not violate § 14-306.4(b) because it does not use an "entertaining display" to conduct the sweepstakes at the point of sale or to reveal the results of the sweepstakes. [Doc. 2-1 at 7-8]. The statutory language, however, is broader than the Plaintiff suggests. Section 14-306.4 prohibits the use of an electronic machine to "[c]onduct a sweepstakes through the use of an entertaining display, *including* the entry process or the reveal of a prize." N.C. Gen. Stat. § 14-306.4(b)(1) (emphasis added). The Defendant has presented evidence that the Plaintiff's system allows customers who have participated in the sweepstakes at the point of sale the subsequent opportunity to win additional loyalty reward points through the playing of video games at the Plaintiff's computer terminals. [Jones Aff., Doc. 6-1 at ¶¶6, 7]. Accordingly, the fact that the Plaintiff's system does not use an "entertaining display" to conduct the initial sweepstakes at the point of sale or to reveal the initial result of the sweepstakes does not necessarily take the Plaintiff's system out of the purview of the statute.

The Plaintiff further contends that the sweepstakes program is not prohibited as it does not award "prizes" within the meaning of the statute. Section 14-306.4 defines a "prize" as "any gift, award, gratuity, good,

service, credit, or anything else of value, which may be transferred to a person, whether possession of the prize is actually transferred, or placed on an account or other record as evidence of the intent to transfer the prize." N.C. Gen. Stat. § 14-306.4(a)(5). Despite the Plaintiff's protestations that the loyalty reward points have no real value and are no different than the type of reward points offered "by retailers all over the country," [Doc. 2-1 at 8], it is undisputed that these points are redeemable not only for discounts at various retail stores, but also directly for cash. [See Lo Aff., Doc. 7 at ¶21]. As such, the award of loyalty reward points through the sweepstakes program and the playing of games at the Plaintiff's computer terminals are clearly things "of value" and thus qualify as "prizes" within the meaning of the statute. For these reasons, the Court concludes that the Plaintiff has failed to demonstrate a likelihood of success on the merits of its declaratory judgment claim.

Next, the Court considers whether the Plaintiff has made the requisite showing of irreparable harm. The purpose of preliminary injunctive relief "is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit ultimately to preserve the court's ability to render a meaningful judgment on the merits." In re Microsoft Corp. Antitrust Litig.,

333 F.3d 517, 525 (4th Cir. 2003). Generally speaking, a party cannot demonstrate irreparable harm where an award of money damages could compensate the party for its loss.³ Hughes Network Sys., Inc. v. InterDigital Communications Corp. 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable."). The Fourth Circuit has recognized, however, that irreparable harm may still exist even if a loss can be compensated by money damages at judgment, where for example the plaintiff's business could not survive absent a preliminary injunction or where the defendant runs the risk of insolvency prior to the entry of a final judgment. Bethesda Softworks, L.L.C. v. Interplay Entertainment Corp., 452 F. App'x 351, 353-54 (4th Cir. 2011); Hughes Network Sys., 17 F.3d at 694. Such situations, however, "are quite narrow, reflecting instances where the harm suffered by the plaintiff from denying the injunction is especially high in comparison to the harm suffered by the defendant from granting it." Hughes Network Sys., 17 F.3d at 694.

---

³ The Court notes that the Plaintiff in its Complaint does not seek any monetary damages, only injunctive and declaratory relief.

Here, the Plaintiff contends that its business will not survive without the issuance of a preliminary injunction. As noted previously, however, the Plaintiff made the voluntary decision to cease operations after Captain Jones questioned the legality of its business. Without an ongoing business, the Plaintiff is not under threat of criminal prosecution, and thus, the Plaintiff has failed to demonstrate that irreparable harm is likely without the imposition of an injunction. Moreover, the Plaintiff has not shown that its business is inoperable without the sweepstakes program. Presumably, the Plaintiff could continue to sell prepaid VISA debit cards without using the loyalty reward point system and thus could continue to operate its business and avoid the threat of criminal prosecution until the resolution of this lawsuit. For these reasons, the Court concludes that the Plaintiff has failed to make a showing of irreparable harm in the absence of injunctive relief.

Further, considering the potential hardships that would be imposed upon the parties, the Court cannot say that the balance of equities tips in the Plaintiff's favor. On the one hand, the Plaintiff claims that it cannot operate its business without the requested relief, but it has failed to demonstrate a likelihood of succeeding on the merits of its claim that the

operation of its business is lawful. On the other hand, the City of Hendersonville clearly has an interest in enforcing the state's gambling laws and protecting its citizens from illegal gambling operations, and granting the requested injunctive relief would greatly impede the City's efforts in that regard. See, e.g., Doran v. Salem Inn, Inc., 422 U.S. 922, 931 (1975) (noting that preliminary injunction prohibiting state prosecution of contested statute "seriously impairs the State's interest in enforcing its criminal laws").

Finally, the Court concludes that the Plaintiff cannot demonstrate that granting injunctive relief would be in the public interest. As the North Carolina Legislature recognized in enacting § 14-306.4, "electronic sweepstakes systems utilizing video poker machines and other similar simulated game play create the same encouragement of vice and dissipation as other forms of gambling, in particular video poker, by encouraging repeated play, even when allegedly used a marketing technique . . . ." Preamble, 2010 N.C. Sess. Laws 2010-103. The North Carolina Supreme Court, in upholding the constitutionality of the statute, also recognized that these computerized sweepstakes games "create[ ] the functional equivalent of a gambling environment and thereby encourage[ ]

15

the ills the General Assembly sought to remedy." <u>Hest Techs., Inc. v. State ex rel. Perdue</u>, 366 N.C. 289, __ S.E.2d. __, 2012 WL 6218202, at *9 (Dec. 14, 2012), <u>pet. for cert. filed</u>, 81 U.S.L.W. 3660 (May 13, 2013). The public policy of North Carolina, as expressed by both the General Assembly and the Supreme Court, militates against granting a preliminary injunction in this matter.

For the foregoing reasons, the Court concludes that the Plaintiff's request for preliminary injunctive relief must be denied.

## O R D E R

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction [Doc. 2] is **DENIED**.

**IT IS SO ORDERED.**

Signed: October 7, 2013

Martin Reidinger
United States District Judge